UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RAYMOND HARDIE COX, )
)
    Plaintiff, )
)
v. ) No. 1:18-CV-00213-JRG-SKL
)
SHERIFF BO BURNETTE, BILL )
GALAGHER, BILL POWELL, TIM )
PRINCE, CHRIS MASTERSON, COREY )
BEASLEY, JOHN DOE NO. ONE, JOHN )
DOE NO. 2, TERRY GANN, and )
MARION COUNTY, )
)
    Defendants. )

## **MEMORANDUM OPINION AND ORDER**

This pro se prisoner's complaint for violation of 42 U.S.C. 1983 is before the Court for screening pursuant to the Prison Litigation Reform Act [Docs. 2 & 3].

**I. SCREENING STANDARDS**

Under the Prisoner Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 . . . creates a right of action for the vindication of constitutional guarantees found elsewhere").

## II.  ALLEGATIONS OF COMPLAINT

Plaintiff alleges that in May 2016, his estranged wife, Cynthia Cox, called the Marion County Sheriff's Department claiming she was in danger at 221 Cox Road, Sequatchie, Tennessee, which is Plaintiff's home address [Doc. 2 at 4]. Plaintiff states that neither he nor his wife were at his residence at the time, and that Ms. Cox made the call only to allow Marion County Deputy Justin Graham an opportunity to make a warrantless, unlawful seizure of Plaintiff's Dodge Durango and deliver it to Ms. Cox [*Id*. at 4-5]. When Plaintiff arrived home the following day to find his vehicle missing, he called his wife, who told him about the seizure of the vehicle and delivery to her [*Id*. at 5]. Thereafter, Plaintiff made formal complaints with Marion County Sheriff Bo Burnette and County Attorney Bill Galagher, neither of whom took any action to correct the theft [*Id*.].

Plaintiff alleges that on September 26, 2017, Marion County Deputies Tim Prince, Chris Masterson, and John Doe No. One again responded to a disturbance call at Plaintiff's address on the basis of a complaint by Ms. Cox [*Id*]. He asserts that neither he nor Ms. Cox were at the home when the deputies arrived, and that the deputies conducted a warrantless search of his home and 1998 Ford Explorer [*Id*. at 5-6]. Plaintiff claims that Deputies Masterson and John Doe No. One used tools to destroy the ignition switch, the anti-theft unit, the kickplate, and the driver's side air

bag and wiring, while Deputy Tim Prince, who was familiar with Ms. Cox and her false claims, did nothing to intervene [*Id*.].

Plaintiff contends that while the search of his home and property was ongoing, he was walking home after having survived a hit-and-run orchestrated by Ms. Cox on a rural backroad [*Id*. at 6]. He states that he arrived home to find his door open and house in disarray, so he walked to a neighbor's house to call his sister for help [*Id*.]. Plaintiff maintains that on his way back to his residence, a neighbor informed him that he had witnessed several deputies on Plaintiff's property and in his home [*Id*. at 7].

The next morning, Plaintiff made numerous unsuccessful attempts to telephone Sheriff Burnette [*Id*.]. Plaintiff spoke with Sheriff's Burnette's assistant, who, after speaking to the Sheriff, advised Plaintiff that the Sheriff stated that Plaintiff needed to make a report with Chief Bill Powell [*Id*.]. Plaintiff, believing Chief Powell to be untrustworthy, first contacted County Attorney Bill Galagher and explained what happened at his home and Sheriff Burnette's refusal to take corrective action [*Id*. at 8]. Plaintiff claims that Attorney Galagher stated that he would discuss the matter with Sheriff Burnette and call Plaintiff back, but that he failed to do so and refused to answer Plaintiff's subsequent calls [*Id*. at 8].

Plaintiff contends when he arrived home on September 27, 2017, he was aggressively approached by Deputies Corey Beasley and John Doe No. Two, who advised Plaintiff they were there to get Ms. Cox's belongings from his home [*Id*. at 9]. Plaintiff claims he then witnessed Ms. Cox exit a vehicle parked behind the police cruiser, at which point he advised the deputies that while Ms. Cox had been an occasional overnight guest at his home, she had not lived at the residence since May 2016 and had no belongings in the home [*Id*.]. Plaintiff asserts that Deputy Beasley became angry and threatened Plaintiff with arrest if he continued to refuse them entry into

the home, but that Plaintiff's steadfast refusal eventually caused the deputies to relent and advise Ms. Cox to return with a recovery warrant [*Id*. at 9-10].

Thereafter, Plaintiff met with Chief Powell and informed him what had transpired in May 2016 and on September 26-27, 2017 [*Id*. at 11]. Plaintiff states that Chief Powell advised him that a full investigation would be mounted and resolved by the following Tuesday [*Id*.]. Plaintiff maintains that when he called Chief Powell the following Tuesday, however, Chief Powell advised him to seek redress in court, as the Sheriff's Department would not repair his vehicle or reimburse him [*Id*.].

Plaintiff states that he made his Ford Explorer operational again, only to total it on October 16, 2017, when the steering locked, and he crashed into an outer guardrail system on a mountain [*Id*. at 12]. He claims that this happened because of the vandalism to his steering column, and that his injuries were worsened by the disabled airbag system [*Id*.].

Plaintiff maintains that he somehow made it home and accepted some vodka to calm his nerves, and that he thereafter awakened to paramedics and Trooper Terry Gann at his bed side [*Id*. at 13]. After Plaintiff refused transport to the hospital, Trooper Gann, without a warrant, placed Plaintiff under arrest for a DUI offense [*Id*.]. Trooper Gann transported Plaintiff to an emergency room, and shortly thereafter, Plaintiff felt an excruciating pain in his torso that Trooper Gann did not relay to medical staff [*Id*. at 14]. Plaintiff claims that medical personnel, apparently frustrated by Plaintiff's election to refuse to provide a blood sample, discharged him without any pain medication or sutures for the numerous lacerations on his body [*Id*. at 15]. Trooper Gann then transported Plaintiff to the jail, placing him in a drunk tank until he posted bond the next day [*Id*.].

On November 2, 2017, some two weeks later, Plaintiff discovered a tennis-ball sized swelling in his neck that made it difficult to swallow [*Id*. at 16]. Plaintiff went to the emergency room and was sedated, while the doctor advised Plaintiff's wife that he had fractured ribs, a

partially collapsed lung, and emphysema in his chest and throat [*Id.*]. Plaintiff asserts that these injuries were from his wreck, and that had Trooper Gann notified the attending doctor of Plaintiff's symptoms the night of the wreck, Plaintiff could have avoided pain and suffering [*Id.*].

## III. DISCUSSION

### A. Statute of Limitations

Plaintiff filed this action in September 2018, but he complains of events occurring as early as May 2016 [*See* Doc. 2]. Accordingly, the Court first considers whether any of Plaintiff's claims are barred by the relevant statute of limitations.

Federal district courts apply the State's statute of limitations for personal injury actions in proceedings arising under 42 U.S.C. § 1983. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Tennessee, that period is one year. *See* Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run, however, is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

In this case, Plaintiff knew of the May 2016 search of his property and alleged theft the day after it transpired, yet he waited until September 2018 to seek redress. Therefore, Plaintiff's allegations that Defendants Burnette and Galagher engaged in wrongdoing of constitutional proportions in May 2016, is barred by the statute of limitations.

### B. Immunity

The decision by Defendant Galagher, the County Attorney, to review evidence and initiate or decline to initiate criminal proceedings is constitutionally protected. *Imbler v. Pachtman*, 424

5

U.S. 409, 430-31 (1976) (providing protection for prosecutor's conduct "in initiating a prosecution"). Therefore, Plaintiff's remaining claims against Defendant Galagher are barred by prosecutorial immunity.

    **C.**    **Fourth Amendment claims**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. With limited exceptions, a warrantless search or seizure in a home is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). Moreover, the "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment," even where a search is lawful. *United States v. Ramirez*, 523 U.S. 65, 71 (1988).

Plaintiff concedes that he was not at home at the time his property was vandalized on September 26, 2017, claiming only that a neighbor told him that law enforcement officers had been on his property earlier. However, he purports to have knowledge that Defendants Masterson and John Doe One entered his home and vehicle while Defendant Prince failed to intervene [*See, e.g.,* Doc. 2 at 5-6]. These allegations are wholly speculative, as is Plaintiff's allegation that deputies are responsible for his wreck in October 2017. *See, e.g., Twombly*, 550 U.S. at 555. Therefore, Defendants Masterson, John Doe One, and Prince are entitled to dismissal.

However, Plaintiff also alleges that he awoke to find Defendant Gann by his bedside, and that he was subsequently placed under a warrantless arrest. Accordingly, because the warrantless seizure of one inside his home is presumptively unreasonable, the Court determines that, at this stage of the proceedings, Plaintiff's allegations are sufficient to allow his Fourth Amendment claim to go forward as to Defendant Gann.

### D. Threats and intimidation

Plaintiff alleges that Defendants Beasley and John Doe Two intimidated and harassed him in an attempt to gain entry to his home on September 27, 2017. However, a defendant's verbal harassment and intimidation, while unpleasant, does not raise a constitutional issue. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that allegations of harassment and verbal abuse are insufficient to assert a claim under the Eighth Amendment). Therefore, Defendants Beasley and John Doe Two will be dismissed.

### E. Marion County

Plaintiff claims that Defendant Sheriff Burnette and Marion County are liable in this action for failing to take action to correct the behavior of Marion County Sheriff's Deputies. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978) (holding local governments can be sued under § 1983 for constitutional deprivations made pursuant to custom or policy); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). However, for Marion County to be liable, a constitutional violation must have occurred. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."). This Court has determined that Plaintiff's allegations against Marion County Deputies are insufficient to rise above the level of speculation, and therefore, his claims against Marion County and Sheriff Burnette will be dismissed.

### F. Medical treatment

Finally, Plaintiff alleges that Defendant Gann refused to intervene while he was at the emergency room and advise physicians of Plaintiff's pain, which resulted in Plaintiff suffering for weeks with undiagnosed injuries, some of which could have been life threatening. A prison

authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).

However, by Plaintiff's admissions, Defendant Gann took Plaintiff to the emergency room for treatment immediately upon his arrest. It strains credulity to assume that between his admission and discharge Plaintiff did not have a single opportunity to interact with any medical personnel to advise them as to his pain. Moreover, Plaintiff was discharged from the hospital upon the orders of medical professionals. Defendant Gann, a non-medically trained officer, was entitled to defer to their opinions that Plaintiff was fit for discharge. *See McGaw v. Sevier Cty., Tennessee*, 715 F. App'x 495, 498 (6th Cir. 2017). Accordingly, Plaintiff's claim against Defendant Gann related to the absence of medical treatment will be dismissed.

## IV. CONCLUSION

For the reasons set forth above:

1. All federal claims except Plaintiff's claim that Defendant Terry Gann violated his Fourth Amendment rights by a warrantless home search and arrest are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted under § 1983;

2. All Defendants except Defendant Terry Gann are **DISMISSED**;

3. The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Gann;

4. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within thirty (30) days of entry of this memorandum and order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Federal Rule of Civil Procedure 4;

5. Plaintiff is **NOTIFIED** that failure to return the completed service packet within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

6. Defendant shall answer or otherwise respond to the complaint and within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default; and

7. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE